# Exhibit A

```
1                UNITED STATES DISTRICT COURT
2          WESTERN DISTRICT OF WASHINGTON AT SEATTLE
3   _____
4   ENCOMPASS INSURANCE COMPANY,  )
    as subrogee of Stephen and    )
5   Stephanie Phillips,           )
                                  )
6            Plaintiff,           )
                                  )
7            vs.                  ) No. 2:23-cv-00231-JCC
                                  )
8   NORCOLD, INC., a foreign      )
    corporation,                  )
9                                 )
             Defendant.           )
10  _____
11          VIDEO-RECORDED ZOOM 30(b)(6) DEPOSITION
12                  UPON ORAL EXAMINATION
13                           OF
14              ENCOMPASS INSURANCE COMPANY
15                     THOMAS SABRICK
16  _____
17                    11:11 A.M. (EST)
18                    OCTOBER 5, 2023
19         WITNESS LOCATION:  MILLSBORO, DELAWARE
20
21
22
23
24  REPORTED BY: CHERYL O. SPRY, CCR No. 2226
25
                                                         Page 1
```

```
 1                  Counsel will now state their appearances and
 2       affiliations for the record, beginning with the noticing
 3       attorney.
 4                  MR. FOSS:  Todd Foss for defendant Norcold.
 5                  MR. SHUMSKY:  George Shumsky for the
 6       plaintiff.
 7                  THE VIDEOGRAPHER:  Thank you.
 8                  Would the court reporter please swear in the
 9       witness.
10                            THOMAS SABRICK,
11         sworn as a witness by the Certified Court Reporter,
12                         testified as follows:
13                              EXAMINATION
14       BY MR. FOSS:
15           Q.   Good morning, Mr. Sabrick.  Can you please
16       state your full name for the record, sir?
17           A.   Yes.  Thomas Sabrick.
18           Q.   Do you have a middle name?
19           A.   Allen.
20           Q.   How do you spell "Allen"?
21           A.   A-L-L-E-N.
22           Q.   Mr. Sabrick, have you ever been deposed
23       before?
24           A.   Yes.
25           Q.   How many times, ballpark?
```

Veritext Legal Solutions
346-293-7000

```
 1         be correct.
 2              Q.   Third paragraph down where I'm highlighting
 3         with my cursor, what does that say?
 4              A.   The local fire investigator has been
 5         assigned -- "The local origin and origin investigator
 6         that has been assigned is Scott Roberts."
 7              Q.   Okay.  And so you told Mr. Phillips that
 8         Mr. Roberts had been -- a fire investigator had been
 9         assigned; correct?
10              A.   Yes.
11              Q.   And Mr. Roberts was assigned by Encompass;
12         correct?
13                   MR. SHUMSKY:  Objection to the form of the
14         question; misrepresents the testimony.
15              Q.   (BY MR. FOSS:)  You can answer.
16              A.   Mr. Roberts was -- the assignment was given to
17         Mr. Shumsky's -- or Attorney Shumsky's office.
18         Mr. Shumsky retained Scott Roberts.  I became aware of
19         Scott Roberts, and advised the insured that Scott
20         Roberts was the assigned investigator and he would be
21         out to inspect the loss.
22              Q.   Okay.  So Encompass went out and retained
23         counsel, legal counsel within one day of this fire
24         occurring; is that correct?
25              A.   Yes.
```

Page 47

1     Q.   Okay.  So Encompass anticipated potential
2  litigation; correct?
3          MR. SHUMSKY:  Objection to the form of the
4  question.
5     Q.   (BY MR. FOSS:)  You can answer, sir.
6     A.   It's normal procedure with us, when we have a
7  large loss, to get counsel involved in the investigation
8  of loss right from the beginning.
9     Q.   Okay.  So --
10    A.   We do that with this fire loss and any fire
11 loss of a large loss magnitude.
12    Q.   And Encompass went and got legal counsel
13 involved within a day of the fire?
14    A.   Yes.
15    Q.   Okay.  Now, you also told Steve Phillips on
16 January 30th, 2021 that Mr. Roberts was looking to
17 inspect the loss on Tuesday morning.
18         Did I read that correctly in your email?
19    A.   Yes.
20    Q.   Okay.  Down here in the last paragraph you
21 said -- you told Mr. Phillips, "For now, until the
22 investigator can inspect the loss do not disturb or
23 remove anything from within the building."
24         Did I read that correctly?
25    A.   Yes.

Page 48

```
 1        Q.   All right.  So you were -- why did you tell
 2   Mr. Phillips that?
 3            MR. SHUMSKY:  Object to the extent that it
 4   will reveal any attorney-client communications that
 5   we've had, Tom.
 6        Q.   (BY MR. FOSS:)  You can answer.
 7        A.   That would be normal procedure, is not to go
 8   in and take anything out of the building so it gives the
 9   investigator the opportunity to look at the loss as
10   it -- as it -- as it was, not to disturb any of the --
11   any of the areas.
12        Q.   So Encompass understands that it's important
13   for fire investigators to be able to go into a fire
14   scene and inspect the loss area in its immediate
15   post-loss condition; correct?
16        A.   Prior to any disturbance, yes.
17            THE COURT REPORTER:  Todd, did you want to
18   mark that email as 3?
19            MR. FOSS:  Correct.
20            THE COURT REPORTER:  Thank you.
21        Q.   (BY MR. FOSS:)  Now, sir, I'm looking back at
22   a calendar.  It appears that January 29th, 2021, the
23   date of loss, was a Friday and that the date of this
24   email would have been on a Saturday.
25            Can you verify that?
```

```
 1      Encompass notified Norcold of the fire loss?
 2              MR. SHUMSKY:  Yes, absolutely.  Yeah, there is
 3      no mystery to it, and we can admit that as an admission.
 4              MR. FOSS:  And the date of --
 5              MR. SHUMSKY:  I just thought that would save a
 6      lot of time, you know, because -- with this line of
 7      questioning.  We could move on to other things.  But
 8      we'll admit, and you can serve us a request for
 9      admission, that Encompass placed Norcold on notice on --
10      I believe June 23rd, 2021 is the date.
11              MR. FOSS:  So we've already served requests
12      for admissions on you, Mr. Shumsky, and those requests
13      for admissions were already answered.  Okay?
14              MR. SHUMSKY:  Yeah, I don't believe you asked
15      the date that the notice was supplied.
16              MR. FOSS:  Okay.  The first date that
17      Encompass and its representatives notified Norcold of
18      this fire loss was June 23rd, 2021.  Can we stipulate to
19      that?
20              MR. SHUMSKY:  Yes, we can stipulate to that on
21      the record.
22          Q.  (BY MR. FOSS:)  Mr. Sabrick, you were involved
23      on behalf of Encompass with communicating with Mr. Steve
24      Phillips, your insured, regarding the demolition of the
25      garage hangar building and removal of all the debris and
```

```
 1        contents in the building after the fire; correct?
 2        A.   Yes.
 3        Q.   Okay.  All that was done prior to June 23rd,
 4   2021; correct?
 5        A.   I'm not sure the exact date of when that --
 6   when the scene was cleared and demolition was to take
 7   place.
 8        Q.   I'm having some issues pulling up a document.
 9   Bear with me.  I'm going to pull up a document.
10             (Deposition Exhibit 4 was marked for
11             identification.)
12        Q.   (BY MR. FOSS:)  Are you able to see this
13   document, sir?
14        A.   Yes.
15        Q.   What is that?
16        A.   Yeah, that's the fire demolition and the
17   debris removal of the -- of the structure there.
18        Q.   And this is in relation to the garage hangar
19   building on the Phillips' property?
20        A.   Correct.
21        Q.   Okay.  The date of this estimate is what,
22   where my cursor is?
23        A.   That would be March 9th, 2021.
24        Q.   Is this your signature down here?
25        A.   No.
```

Page 60

```
1          Q.   Okay.  Is that Mr. Phillips' signature, if you
2     know?
3          A.   I'm not aware.  It looks like it could be his
4     signature.
5          Q.   Mr. Phillips submitted this estimate to you;
6     correct?
7          A.   Yes.
8          Q.   And the estimate was for work in demolishing
9     the remains of the garage hangar building on the
10    Phillips' property.  True?
11         A.   Correct.
12         Q.   And removing all the debris in the building;
13    correct?
14         A.   Correct.
15         Q.   And disposing of all the, you know, demolished
16    and existing debris; right?
17         A.   Correct.
18         Q.   And you on behalf of Encompass approved this
19    estimate; correct?
20         A.   Yes.
21         Q.   And what we're looking at now is, excuse me,
22    PLAINTIFF 115.  For some reason, there is a redaction
23    right here.  It's an email from you, Thomas Sabrick,
24    dated March 12th, 2021; correct?
25         A.   Yes.
```

Page 61

```
1        Q.   In the body of the email it says, "Hi
2   Stephen."
3            Do you believe that that's Stephen Phillips?
4        A.   Yes.
5        Q.   Okay.  So this is an email from yourself to
6   Steve Phillips following up from a telephone
7   conversation in which you informed him that Encompass
8   had issued payment in the amount of the estimate?
9        A.   Yes.
10       Q.   Okay.  And that was done on March 12th, 2021;
11  right?
12       A.   Correct.
13            (Deposition Exhibit 5 was marked for
14            identification.)
15       Q.   (BY MR. FOSS:)  Exhibit 5 to your deposition
16  is the next document we pulled up.  And this is a letter
17  from yourself to Steve Phillips, or Steve and Stephanie
18  Phillips.  Right?
19       A.   Yes.
20       Q.   Okay.  And it's essentially stating the same
21  thing, right, that Encompass has issued payment to the
22  Phillips in the amount of $63,602 for the agreed cost
23  for the demolition and debris removal per the proposal
24  from R and J Dirtworks; right?
25       A.   Yes.
```

1        A.   Correct.
2        Q.   Okay.  And so we know as of at least
3   April 6th, 2021, the building had been demolished and
4   all debris from the fire scene had been removed from the
5   fire scene; right?
6        A.   Correct.
7        Q.   This next document is the document that your
8   counsel just referred to.  It is a letter from your
9   counsel's law firm to Norcold, dated June 23rd, 2021.
10  Do you see this?
11       A.   I do.
12       Q.   And do you see it says, Our office represents
13  the Encompass Insurance Company, or Encompass, in
14  connection with the above claim.  On January 29, 2021 a
15  fire associated with a Norcold large stainless steel
16  double-door refrigerator (the refrigerator) caused
17  damage to the 2006 Monaco Diplomat 40PAQ RV it was
18  installed in and surrounding property.
19            Did I read all that correctly?
20       A.   Yes.
21       Q.   And that letter is written from Brent Hardy of
22  the Shumsky and Backman law firm; right?
23       A.   Correct.
24       Q.   Okay.  And that letter was written on behalf
25  of Encompass; correct?

```
 1              REPORTER'S CERTIFICATE
 2         I, CHERYL O. SPRY, the undersigned Certified Court
 3    Reporter, pursuant to RCW 5.28.010, authorized to
 4    administer oaths and affirmations in and for the State
 5    of Washington, do hereby certify:
 6         That the sworn testimony and/or proceedings, a
 7    transcript of which is attached, was given before me at
 8    the time and place stated therein; that any and/or all
 9    witness(es) were by me duly sworn to testify to the
10    truth; that the sworn testimony and/or proceedings were
11    by me stenographically recorded and transcribed under my
12    supervision, to the best of my ability; that the
13    foregoing transcript contains a full, true, and accurate
14    record of all the sworn testimony and/or proceedings
15    given and occurring at the time and place stated in the
16    transcript; a review of which was requested; that I am
17    in no way related to any party to the matter, nor to any
18    counsel, nor do I have any financial interest in the
19    event of the cause.
20         WITNESS MY HAND AND DIGITAL SIGNATURE THIS 10th day
21    of OCTOBER, 2023.
22    
23    
24         CHERYL O. SPRY
      Washington State Certified Court Reporter No. 2226
25
```

Page 100