# Exhibit E

1

The Honorable Jamal N. Whitehead

2

3

4

5

6

7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

8

9

| ENCOMPASS INSURANCE COMPANY, as subrogee of Stephen and Stephanie Phillips,<br><br>Plaintiff,<br><br>vs.<br><br>NORCOLD, INC., a foreign corporation,<br><br>Defendants. | No. 2:23-cv-00231-JNW<br><br>DECLARATION OF CHRIS BLOOM, CFEI |
| --- | --- |

10

11

12

13

14

15

16

I, Chris Bloom, CFEI, declare under 28 U.S.C. § 1746 as follows:

17

1.      I am over twenty-one (21) years of age, am of sound mind, and am competent

18

to make this declaration. I have personal knowledge of the facts stated herein and they are all

19

true and correct.

20

2.      I am a certified fire origin and cause investigator. I am the owner of CJB Fire

21

Consultant. I have over 40 years of experience as a fire consultant, investigating and

22

determining the origin and cause of all types of fire losses, including recreational vehicles. I

23

have provided support, as consultant and contributing author, to the National Fire Protection

24

Association (NFPA) 921 and other leading industry technical reference manuals. I serve and

25

26

DECLARATION OF
CHRIS BLOOM - 1



WILSON
SMITH
COCHRAN
DICKERSON

1000 SECOND AVENUE, SUITE 2050
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 623-4100
FAX: (206) 623-9273

actively participate on five NFPA technical committees and two American Society for Testing and Materials (ASTM) technical committees, assisting in the drafting of new codes and revisions to existing codes.

3.    I was retained by Norcold in this lawsuit as a fire origin and cause expert.

4.    The NFPA publishes NFPA 921 – Guide for Fire and Explosion Investigations, which is universally-recognized as setting forth the methodology utilized when conducting any fire origin and cause investigation. NFPA 921 is a peer-reviewed, scientific-based document that is developed through an open consensus process on a three-year revision cycle. NFPA 921 provides that every fire incident is unique and different from any other and, therefore, a fire investigation should be conducted according to the scientific method. NFPA 921 sets forth the recommended practices to be followed, using the scientific method, for the analysis of a fire incident and the subsequent formulation of hypotheses regarding the origin and cause of the fire.

5.    NFPA 921 requires a fire investigator to first establish the origin of the fire. If the investigator is able to establish the origin of the fire, it is then appropriate to determine the cause of the fire. It is generally accepted in the industry that if the origin of the fire cannot be determined, then the cause cannot be determined.

6.    NFPA 921 recommends a methodology to follow in determining the origin of a fire. In particular, the "area of origin" is defined as the general geographic location within a fire scene in which the "point of origin" of a fire is reasonably believed to be located. The "point of origin" is defined as the exact physical location within the area of origin where a heat source, a fuel, and an oxidizing agent first interact with each other resulting in a fire or explosion. Notably, NFPA 921 requires that an investigator investigate and consider the following before

DECLARATION OF
CHRIS BLOOM - 2



WILSON
SMITH
COCHRAN
DICKERSON

1000 SECOND AVENUE, SUITE 2050
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 623-4100
FAX: (206) 623-9273

making a conclusion regarding the origin of a fire: (1) all witness statements and information; (2) fire patterns; and (3) fire dynamics. Fire dynamics is defined as the analysis of the physics and chemistry of fire initiation and growth and the interaction between the fire and the building's systems.

7.    NFPA 921 also recommends a methodology to follow in determining the cause of a fire. Generally, a fire-cause determination can be considered reliable only if the origin of the fire has been correctly determined. NFPA 921 requires an investigator to identify the facts necessary for the fire to have occurred—specifically, the presence of a competent ignition source, the type and form of the first fuel ignited, the oxidizing agent, and the circumstances that allowed those facts to come together to start the fire. NFPA 921 requires that the fire investigator employ deductive reasoning in reaching a conclusion pertaining to causation. The deductive reasoning includes the identification of each cause hypothesis and comparison of the hypothesis to all known facts, as well as the body of scientific knowledge associated with the phenomenon relevant to the specific incident. The cause determination is then ultimately arrived at through the testing of the cause hypotheses.

8.    The procedures, practices, and techniques set forth in NFPA 921, including the scientific method, require the evidence involved in a fire to be preserved for examination in order to perform a proper and complete investigation of the origin and cause of the fire.

9.    NFPA 921, Section 7.8.8 provides: "The identification, handling, storage, and transfer of evidence may be critical in providing all interested parties the opportunity to evaluate the evidence. Where possible, all interested parties should be notified of the loss and given the opportunity to examine the evidence in place. . . . Destruction or alteration of the evidence

DECLARATION OF
CHRIS BLOOM - 3

without consent, agreement, or presence of other known interested parties could result in a claim of evidence spoliation."

10.     Section 12.3.5 of NFPA 921 is entitled "Spoliation of Evidence" and provides as follows: "Spoliation of evidence refers to the loss, destruction, or material alteration of an object or document that is evidence or potential evidence in a legal proceeding by one who has the responsibility for its preservation. Spoliation of evidence may occur when the movement, change, or destruction of evidence, or the alteration of the scene significantly impairs the opportunity of other interested parties to obtain the same evidentiary value from the evidence, as did any prior investigator."

11.     NFPA 921 Section 12.3.5.1 provides: "It is the responsibility of the investigator (or anyone who handles or examines evidence) to avoid spoliation of evidence . . . ."

12.     NFPA 921 Section 12.3.5.4 is entitled "Notification to Interested Parties" and states: "Claims of spoliation of evidence can be minimized when notice is given to all known interested parties that an investigation at the site of the incident is going to occur so as to allow all known interested parties the opportunity to retain experts and attend the investigation."

13.     I have knowledge that the first time Encompass Insurance Company ("Encompass") provided notice of this fire loss to Norcold was in late June 2021, which was approximately five months after the fire had occurred and several months after Encompass's experts had completed their inspection of the fire scene and removed the Norcold refrigerator from the RV at the fire scene, the building was demolished, and the RV and other contents in the building were removed and not preserved.

14.     Because Norcold was not put on notice of any inspections of the fire scene and was not put on notice of the fire loss until months after the fire scene was cleared and destroyed,

DECLARATION OF
CHRIS BLOOM - 4



WILSON
SMITH
COCHRAN
DICKERSON

1000 SECOND AVENUE, SUITE 2050
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 623-4100
FAX: (206) 623-9273

I never had any opportunity to personally observe, inspect, examine, or document in person the building, the contents of the building, or the RV and its components and contents, including but not limited to the Norcold refrigerator, other appliances, and the electrical systems in the RV, at the fire scene in their post-fire condition. I therefore was precluded from visually observing in person the fire scene and analyzing the burn patterns present at the fire scene, including on the building and the RV, as well as the fire dynamics. I was precluded from conducting a NFPA 921 investigation into the origin and cause of the subject fire by the failure of Encompass and its experts to preserve the fire scene and material evidence at the scene in their immediate post-fire condition.

15.    During the course of my career of over 40 years as a certified fire and explosion investigator, I have investigated many fires involving recreational vehicles that were ultimately determined to have been caused by electrical abnormalities in the electrical system of the recreational vehicle, including but not limited to arcing that occurred in coach electrical wiring and high resistance connections at the interface between a receptacle outlet and electric service wiring.

16.    My investigations into the origin and cause of fires involving recreational vehicles always includes both visual observation and physical examination of the electrical systems of the recreational vehicle, including but not limited to electrical wiring and conductors for both the 120-volt AC and 12-volt DC electrical systems, the 120-volt AC electrical circuit breaker panel and the circuit breakers, the 12-volt DC electrical fuse panel and the fuses, duplex outlet receptacles in the recreational vehicle, the electric shore power cord from the recreational vehicle, and the shore power outlet into which the shore power cord was plugged at the time of the fire. My fire scene inspections done as part of origin and cause investigations of fires

DECLARATION OF
CHRIS BLOOM - 5



WILSON
SMITH
COCHRAN
DICKERSON

1000 SECOND AVENUE, SUITE 2050
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 623-4100
FAX: (206) 623-9273

involving recreational vehicles include personal observation and close examination of electrical wiring in the recreational vehicle, which can reveal locations of electrical arcing that can impact the fire origin and cause determination. Evidence of tripped circuit breakers inside the recreational vehicle can be critical. My inspections of fire scenes include examination of the recreational vehicle's 120-volt AC circuit breaker panel and circuit breakers, as well the 12-volt DC fuse panel and fuses, to determine whether any circuit breakers or fuses tripped and, if so, to determine what was being powered by the electrical lines whose breakers or fuses tripped. These steps are critical to my investigation into the cause of a fire because they allow me to assess and determine if any electrical abnormalities or failure(s) in the electrical system of the recreational vehicle were involved in the ignition sequence of the particular fire. Without inspecting a recreational vehicle's electrical system and its various components, I cannot exclude or rule out its potential involvement in the ignition sequence of a fire.

17.     Encompass and its experts failed to preserve critical electrical artifacts from the electrical systems of the recreational vehicle owned by Stephen and Stephanie Phillips (the "RV"), including but not limited to electrical wiring for both the 120-volt AC and the 12-volt DC electrical systems, the 120-volt AC circuit breaker panel and circuit breakers, the 12-volt DC fuse panel and fuses, the duplex outlet receptacles (including the outlets in which the electric dehumidifier and the electric radiant heater were plugged in at the time of the fire), the RV shore power cord, and the shore power outlet into which the shore power cord was plugged at the time of the fire. Consequently, I had no opportunity to inspect and examine these artifacts in person as part of my fire origin and cause investigation. As a result, I cannot exclude or rule out any involvement of the electrical systems of the RV as part of the ignition sequence of the fire.

DECLARATION OF
CHRIS BLOOM - 6



WILSON
SMITH
COCHRAN
DICKERSON

1000 Second Avenue, Suite 2050
Seattle, Washington 98104
Telephone: (206) 623-4100
Fax: (206) 623-9273

18.     Encompass and its experts also failed to preserve the building in which the RV was parked at the time of the fire, and the contents within the building. As a result, I had no opportunity to personally inspect and examine the building and its contents, including the building's electrical system, overhead propane heaters, and other appliances or contents that were present in the building at the time of the fire. Consequently, I cannot exclude or rule out any involvement of the building's electrical system, the overhead propane heaters, or any other appliances or contents from the building as part of the ignition sequence of the fire.

19.     Any materials generated by other fire investigators that I was able to review as part of my actions in this matter were insufficient for me to reach a determination of the origin or cause of this fire. After Norcold retained me in this matter, I reviewed fire scene photographs and an investigation report generated by Deputy Fire Marshal Dan Lorentzen of the Snohomish County Fire Marshal's Office, but these materials did not provide me with enough information upon which to base a determination of either the origin or cause of the fire. There were many inconsistencies and omissions in the report prepared by Mr. Lorentzen. I did not receive fire scene photographs taken by Encompass's and Essentia Insurance Company's experts Scott Roberts and Jeff Marsh of Jensen Hughes until early October 2024, when Encompass and Essentia produced its experts' file in connection with the depositions of Mr. Marsh and Mr. Roberts taken on October 8 and 15, 2024, respectively. This was nearly an entire year after I submitted my Rule 26 expert report in this matter. In any event, review of those photographs would still not allow me to make any determination as to the origin or cause of the fire.



WILSON
SMITH
COCHRAN
DICKERSON

1000 SECOND AVENUE, SUITE 2050
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 623-4100
FAX: (206) 623-9273

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

I declare, under penalty of perjury under the laws of the United States, that the foregoing is true and correct. Executed this 28th day of October, 2024, at White City, Oregon.


Chris J. Bloom, CFEI
CJB Fire Consultant

DECLARATION OF
CHRIS BLOOM - 8

WILSON
SMITH
COCHRAN
DICKERSON

1000 Second Avenue, Suite 2050
Seattle, Washington 98104
Telephone: (206) 623-4100
Fax: (206) 623-9273