1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ENCOMPASS INSURANCE COMPANY,<br><br>     Plaintiff,<br><br>  v.<br><br>NORCOLD, INC.,<br><br>     Defendant. | CASE NO. 2:23-cv-231<br><br>ORDER |
| ESSENTIA INSURANCE COMPANY,<br><br>    Intervention Plaintiff,<br><br>  v.<br><br>NORCOLD, INC.,<br><br>    Intervention Defendant. | |

## 1. INTRODUCTION

Defendant Norcold, Inc. moves to exclude the opinions and testimony of
Subrogation-Plaintiffs Encompass Insurance Company ("Encompass") and Essentia
Insurance Company's ("Essentia") (collectively, "Plaintiffs") expert forensic
electrical engineer, Jeff Marsh. Dkt. No. 56. Norcold also moves to strike Marsh's

ORDER - 1

declaration filed in support of Plaintiff's opposition to the motion to exclude him. Dkt. No. 67. Having reviewed the record, the parties' briefing, and the law, and being fully informed, the Court DENIES the motion to exclude and DENIES the motion to strike.

## 2. BACKGROUND

This product liability action arises from a January 2021 fire that destroyed the garage, recreational vehicle ("RV"), and other property belonging to Stephen and Stephanie Phillips ("insureds"). Dkt. No. 1. Subrogation-Plaintiffs Encompass and Essentia, both of which are insurance companies that indemnified the insureds for portions of their losses, bring claims against Norcold, a manufacturer and distributor of refrigerators. *Id.* They allege that a defective Norcold refrigerator inside the insureds' RV caused the fire. *Id.*

Plaintiffs retained the investigative firm Jensen Hughes to provide expert opinion and testimony about the origins of the fire. Dkt. No. 61 ¶ 5. On March 4, 2024, Plaintiffs timely disclosed their experts and accompanying report. Dkt. Nos. 56-1, 56-2. The report, prepared by Jensen Hughes, contains six opinions: Opinions 5.1 through 5.6. Dkt. No. 56-2. This motion to exclude attacks the reliability and admissibility of Opinions 5.2 and 5.3. Dkt. No. 56. Plaintiffs have designated Jensen Hughes Senior Electrical Engineer Jeff Marsh to testify about these two contested opinions. *See* Dkt. Nos. 56-1; 56-3 at 8 (Marsh Deposition) ("I am not offering an opinion on anything else other than 5.2 and 5.3.").

Opinions 5.2 and 5.3 read, in full, as follows:

5.2 Opinion: The GE Dehumidifier was eliminated as the source of the fire.

5.2.1 Basis: No electrical arcing was identified within the dehumidifier that would indicate that it was capable of starting the fire.

5.3.2 Basis: The radiographic examination of the dehumidifier did not reveal any evidence of the anomalous electrical activity within the product.

Basis: Since no evidence of electrical failure of the dehumidifier was found, the dehumidifier was eliminated as a probable cause of the fire.

5.3 Opinion: The Delongi oil-filled radiant heater did not start the fire.

5.3.1 Basis: No electrical arcing was identified within the dehumidifier that would indicate that it was capable of starting the fire.

5.3.2 Basis: The radiographic examination of the dehumidifier did not reveal any evidence of the anomalous electrical activity within the product.

Basis: Since no evidence of electrical failure of the dehumidifier was found, the dehumidifier was eliminated as a probable cause of the fire.

Dkt. No. 56-2 at 32.

During his deposition, Marsh admitted that the report's bases for Opinion 5.3 had been copy and pasted from Opinion 5.2, which explains why the bases for Opinion 5.3 reference the dehumidifier rather than, as they should, the heater. Dkt. No. 56-3 at 41-44 (referring to this mistake as a "typographical error"). According to Marsh, the word "dehumidifier" should have been replaced with the word "heater," but the gist of Basis 5.3.1 is still valid. *Id.* at 42 ("[T]here was no electrical arcing identified in the heater, though it says the dehumidifier[.]"). By contrast, Marsh admitted that "[t]here was no radiographic examination of that heater, and that 5.3.2 should not be included there." *Id.* at 42.

1

2

## 3.  DISCUSSION

### 3.1  Legal standard.

Rule 702 of the Federal Rules of Evidence governs the admission of expert opinion testimony in federal court:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702. Rule 702 is to be applied with a "liberal thrust favoring admission, [but] it requires that expert testimony be both relevant and reliable." *Messick v. Novartis Pharms. Corp.*, 747 F.3d 1193, 1196 (9th Cir. 2014) (cleaned up). "Expert opinion testimony is *relevant* if the knowledge underlying it has a valid connection to the pertinent inquiry. And it is *reliable* if the knowledge underlying it has a reliable basis in the knowledge and experience of the relevant discipline." *United States v. Sandoval-Mendoza*, 472 F.3d 645, 654 (9th Cir. 2006) (emphasis added) (quotation marks and citation omitted).

The Rule 702 reliability inquiry assesses "not the correctness of the expert's conclusions but the soundness of his methodology." *Daubert v. Merrell Dow Pharms., Inc.*, 43 F.3d 1311, 1318 (9th Cir. 1995). The Supreme Court in *Daubert* set forth several factors that courts may consider in assessing reliability, such as testing, peer review and publication, error rates, and scientific consensus. *Daubert*

ORDER - 4

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

*v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 593–94 (1993). But the inquiry is "flexible," *id.*, and courts have "broad latitude" in deciding "whether *Daubert*'s specific factors are, or are not, reasonable measures of reliability in a particular case[.]" *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 153 (1999). "Shaky but admissible evidence" is to be attacked by "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof"— not exclusion. *Daubert*, 509 U.S. at 596.

Along with proving relevance and reliability, parties offering expert opinion testimony must comply with procedural requirements. Rule 26(a) mandates that retained experts provide a report containing "a complete statement of all opinions the witness will express and the basis and reasons for them." Fed. R. Civ. P. 26(a)(2)(B)(i). Rule 37 "gives teeth to [Rule 26(a)] by forbidding the use at trial of the information required to be disclosed by Rule 26(a) that is not properly disclosed." *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001); *see* Fed. R. Civ. P. 37(c)(1) ("If a party fails to provide information... as required by Rule 26(a)..., the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or harmless."). Whether to exclude an expert opinion under Rule 37 as a sanction for untimely disclosure is a matter of judicial discretion. *Fjelstad v. Am. Honda Motor Co.*, 762 F.2d 1334, 1337 (9th Cir. 1985).

1

2

### 3.2    Opinion 5.2, eliminating the dehumidifier as the source of the fire, is reliable and admissible.

3

4

Plaintiffs' expert report explains the basis of Opinion 5.2—that the

5

dehumidifier did not start the fire. It explains that on June 29 and July 29, 2021,

6

Plaintiffs' experts, together with representatives from Norcold, conducted a

7

destructive evidence examination of the dehumidifier, which Plaintiffs had taken

8

and preserved from the fire scene. Dkt. No. 56-2 at 11. As part of this examination,

9

Plaintiffs' experts "[v]isually examined and photographically documented the

10

remnants of the dehumidifier… in its as-received condition," "[d]isassembled the

11

dehumidifier to visually examine and photographically document internal electrical

12

components and wiring of the dehumidifier[,]" and "[x]-rayed the dehumidifier…

13

and circuit boards[.]" *Id.* at 14 (including photographs and x-ray images). The visual

14

examination revealed "[n]o electrical arcing… within the dehumidifier that would

15

indicate it was capable of starting the fire." *Id.* at 32. Likewise, "the radiographic

16

examination of the dehumidifier did not reveal any evidence of the anomalous

17

electrical activity within the product." *Id.* The report thus concludes: "Since no

18

evidence of electrical failure of the dehumidifier was found, the dehumidifier was

19

eliminated as a probable cause of the fire." *Id.*

20

Norcold disputes the reliability of this opinion, contending that Plaintiffs'

21

experts "improperly ignored the fact that many internal electrical components and

22

internal electrical wiring were missing at the time of his examination." Dkt. No. 56

23

at 5. According to Norcold, these missing parts, all of which were lost to the fire,

include "the line cord for the dehumidifier (including its male plug)," "the duplex

1    receptacle in the RV into which the line cord was plugged at the time of the fire,"
2    "severed internal conductors whose missing portions were not located at the fire
3    scene," "a connector with missing wiring," and "the humidistat of the
4    dehumidifier[.]" *Id.* at 6-7. Norcold contends that these missing parts could have
5    started the fire, or at least, if examined, clarified the fire source, and that Marsh
6    admitted this in deposition. *Id.* (citing Dkt. No. 56-3 at 39-40) (Q: "If the thermal
7    cutoff for the dehumidifier failed internally, the compressor would not have shut off
8    if it overheated; correct?" A: "That's correct." Q: And if that happened, this could
9    lead to an internal failure of the dehumidifier… is that correct?" A: "It could
10   overheat. Correct." Q: "And that would be a potential fire cause; correct?" A: "That is
11   correct.").

12          Norcold may be correct. The unpreserved electrical components, if they had
13   been recovered and examined, may have revealed different information about the
14   source of the fire. But Plaintiffs' experts cannot travel in time; they are restricted to
15   the materials recovered from the fire. As Encompass explains, "The evidence that
16   was available for examination, including the internal components and wiring
17   located inside the metal housing of the dehumidifier revealed no evidence of a
18   failure, such as electrical arcing, localized resistive heating on a conductor, or the
19   failure of contacts on control devices. The opinion that the dehumidifier was not the
20   ignition source of the fire was based on the evidence available for examination and
21   not speculative on what evidence was not available." Dkt. No. 60 at 7. This
22   explanation is enough to persuade the Court that Plaintiffs' experts utilized the
23   materials available to them and applied sound testing methodologies to arrive at

their conclusion that, on a more-probable-than-not basis, the dehumidifier did not cause the fire. Norcold may argue that the missing electrical components render this opinion "shaky," but any alleged shakiness should be addressed through the crucible of cross-examination and the adversarial process. *Daubert*, 509 U.S. at 596. Outright exclusion is unwarranted.

### 3.3    Opinion 5.3, eliminating the heater as the source of the fire, is reliable and admissible.

Plaintiffs' experts also examined the heater. Dkt. No. 56-2 at 11. Specifically, they "[v]isually examined and photographically documented the remnants of the oil radiant electric heater… in its as-received condition," "[d]isassembled the heater's control panel, exposing components and electrical connections," and "[v]isually examined and photographically documented the heater's thermostat switch, level switch and heater element[.]" *Id.* (including photographs). They concluded from this examination that the heater did not start the fire.

But rather than properly stating their observations from these examinations as bases for their opinion, the experts erred in their report by copying-and-pasting the bases for their opinion regarding the dehumidifier (i.e., the wrong opinion) into the section of their analysis dealing with the heater. *See* Dkt. No. 56-3 at 41-44 (referring to this as a "typographical error"). In its motion to exclude Marsh's opinion, Norcold seizes on this error, asserting that "the Jensen Hughes Report does not set forth any factual basis or foundation for [Marsh's] opinion that the radiant heater did not start the fire." Dkt. No. 56 at 8. The Court, however, is not inclined to grant such significance to an obvious typographical mix-up. The report makes clear

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

that Marsh's team directly inspected and disassembled the heater to assess whether the electrical components exhibited signs of malfunction. And Marsh, in his October 2024 deposition, stood by the report's conclusion that the heater, on a more-likely-than-not basis, did not start the fire, given that "there was no electrical arcing identified in the heater[.]" Dkt. No. 56-3 at 44. The Court is persuaded that the absence of electrical arcing inside the heater, as revealed by the experts' visual examination, gave them a sufficiently reliable basis to conclude that the heater did not start the fire. Again, to the extent Norcold disputes this conclusion, their dispute goes to the weight, not the admissibility, of the evidence. Likewise, as with Opinion 5.2 (*see supra*, § 3.2), the Court is not swayed by Norcold's remaining arguments that Plaintiffs' experts failed to inspect missing electrical components not recovered from the fire scene.

Finally, the Court rejects Norcold's argument that Plaintiffs, by failing to state the basis for Opinion 5.3 due to their copy-and-paste error, violated their Rule 26(a) disclosure requirements. On the face of the expert report, the nature of Jensen Hughes's copy-and-paste error is plain, as is the fact that the experts inspected not just the dehumidifier, but also the heater. And even if the Jensen Hughes report *did* fail to state a basis for Opinion 5.3 in violation of Rule 26(a), Marsh clarified this error on the record in his deposition, at Dkt. No. 56-3 at 41-44, and the Court therefore finds the error harmless and inappropriate as grounds for a Rule 37 sanction. Exclusion is thus unwarranted.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

**3.4    The Court need not rely on the Marsh Declaration to resolve the motion to exclude his expert opinion testimony. The Court therefore denies the motion to strike the Marsh Declaration.**

In his declaration in opposition to Norcold's motion to exclude his expert testimony, Marsh offers multiple factual assertions that are not contained in his expert report. For example, he asserts that malfunctioning electrical equipment often emits distinct odors, and that at no time did Stephen Phillips sense such odors emanating from the dehumidifier or heater. Dkt. No. 62 ¶¶ 7-8.

In its reply in support of the instant motion, Norcold moves to strike Marsh's entire declaration for the proliferation of such untimely assertions. As for Marsh's assertion that Phillips did not smell any malodorous emissions from the electrical equipment, for example, Norcold points out that "Marsh admitted [under deposition that] he never spoke with Mr. Phillips" and that "Marsh never identified this basis either in the JH Report or before the disclosure deadline[.]" Dkt. No. 67 at 3. Therefore, according to Norcold, this basis of opinion is "untimely" and "not based on personal knowledge." *Id.*

Norcold's argument has some merit. But the Court need not rely on the Marsh Declaration to resolve the instant motion to exclude. *See supra* §§ 3.2-3.3 (finding Opinions 5.2 and 5.3 admissible based on the report itself). To the extent the Marsh Declaration provides retroactive, untimely bases for Opinions 5.2 and 5.3, the Court finds the declaration unpersuasive and unnecessary, as the Jensen Hughes report itself, read in the light of Marsh's deposition, gives adequate bases for Opinions 5.2 and 5.3. As such, the Court finds no reason to strike the Marsh Declaration from the record. The Court thus DENIES Norcold's motion to strike.

ORDER - 10

This decision, of course, does not amount to a free pass for Marsh to testify at trial on matters outside his knowledge, experience, or the bounds of the expert report.

### 4. CONCLUSION

In sum, the Court finds that Opinions 5.2 and 5.3, eliminating the heater and dehumidifier as sources of the fire, are reliable and admissible. As such, the Court DENIES Norcold's motion to exclude. And because the Court need not rely on the Marsh Declaration to resolve the motion to exclude, the Court DENIES Norcold's motion to strike the Marsh Declaration.

It is so ORDERED.

Dated this 6th day of January, 2025.

Jamal N. Whitehead
United States District Judge