1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ENCOMPASS INSURANCE
COMPANY, as subrogee of Stephen and
Stephanie Phillips,

                Plaintiff,

      v.

NORCOLD INC.,

                Defendant.

ESSENTIA INSURANCE COMPANY,

                Intervention Plaintiff,

      v.

NORCOLD INC.,

                Intervention Defendant.

CASE NO. 2:23-cv-231

ORDER

## 1.  INTRODUCTION

This matter comes before the Court on Defendant Norcold Inc.'s ("Norcold")

motion for sanctions against Subrogation-Plaintiff Encompass Insurance Company

("Encompass") for spoliation of material evidence. Dkt. No. 55. Norcold also moves

ORDER - 1

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

to strike certain statements in Encompass's counsel George Shumsky's declaration in opposition to the motion for sanctions. Having closely reviewed the record, the parties' briefing, and the law, the Court is fully informed. For the reasons stated below, the Court GRANTS IN PART and DENIES IN PART the motion.

## 2.   BACKGROUND

On January 29, 2021, a fire destroyed Stephen and Stephanie Phillips' ("insureds") garage, recreational vehicle ("RV"), and other property. Dkt. No. 1-2. Encompass, an insurance company, indemnified a portion of the losses. *Id.* As the insureds' subrogee, Encompass brings this product liability action against Norcold, a manufacturer of refrigerators. *Id.* Encompass alleges that a defective Norcold refrigerator in the insureds' RV caused the fire. *Id.*

Within a day of the fire, Encompass retained counsel, who retained a team of expert investigators to inspect the scene. Dkt. Nos. 55-1 at 4-5; 55-2 at 31. The investigators inspected the fire scene multiple times in January and February 2021. Dkt. No. 58-2 at 7. According to their report, their on-site "[e]xamination… revealed the origin of the fire to be at the passenger side mid-section of the [RV]." *Id.* They explained: "The fire scene examination further disclosed that within the area of origin within close proximity to each other, were the dehumidifier, oil radiant heater and the motorcoach refrigerator, which were all collected for further forensic evaluation. At the time of the site examination, we could not rule out any of the three items due to the extensive fire damage." *Id.*

Meanwhile, the Snohomish County Fire Marshal also investigated the fire scene, beginning on the day of the fire. Dkt. No. 58-1 at 19. In April 2021, the Fire

ORDER - 2

Marshal issued a final report, including 395 photographs of the fire scene. *Id.* at 58-69. Like Encompass's experts, the Fire Marshal concluded that the fire "start[ed] near the center of the [garage] structure, in [the RV]." *Id.* at 19. The report stated: "While the exact cause of the fire is undetermined, three possible causes that cannot be rule[d] out are [1] high resistance heating/arcing within an energized and operating dehumidifier, [2] portable electric oil filled radiant heater, or [3] a failure with the electric refrigerator/freezer inside the motorhome." *Id.*

On March 9, 2021, the insureds submitted an estimate to Encompass for the demolition of the burnt-out garage building. Dkt. No. 55-3. Encompass approved the estimate, *see id.*, and by April 6, the demolition was complete. Dkt. No. 55-1 at 11. Norcold did not get a chance to inspect the fire scene before the demolition, as Encompass only notified Norcold of the fire on June 23, 2021—nearly five months after the fact. Dkt. No. 55-1 at 7.

Norcold now moves for sanctions for spoliation because the garage and RV were demolished before Norcold could inspect the scene. Dkt. No. 55. Norcold requests three forms of relief. First, it requests outright dismissal. *Id.* at 3. Second, in the alternative, it requests a four-point jury instruction that "(i) Plaintiff failed to preserve the Fire scene, the RV, and the Building and its contents[,] and instead cleared all evidence from the Fire scene, despite Plaintiff knowing it had a duty to preserve this evidence and an understanding of the importance of preserving the evidence, (ii) Plaintiff did not give Norcold notice of any Fire scene inspections conducted by Plaintiff, (iii) Plaintiff did not give Norcold notice of the Fire loss until nearly five months following the Fire, after Plaintiff had already inspected the Fire

ORDER - 3

scene on multiple occasions and all evidence had already been cleared from the Fire scene, and (iv) had Norcold been given the opportunity to inspect the Fire scene, the RV, and the Building and its contents with its experts, the resulting evidence would have been unfavorable to Plaintiff and favorable to Norcold." *Id.* at 3-4. Third, and finally, Norcold seeks an order excluding "any evidence from Plaintiff's inspections of the Fire scene that is unfavorable to Norcold, including but not limited to evidence and testimony from Plaintiff's experts." *Id.* at 4.

### 3.  DISCUSSION

### 3.1   Legal standard.

Federal courts possess inherent powers to manage litigation. *Chambers v. Nasco*, 501 U.S. 32, 43 (1991). One such power is the discretion to levy sanctions for spoliation. *Glover v. BIC Corp.*, 6 F.3d 1318, 1329 (9th Cir. 1993).

"Spoliation of evidence is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence, in pending or future litigation." *Kearney v. Foley & Lardner, LLP*, 590 F.3d 638, 649 (9th Cir. 2009) (internal quotation and citation omitted). "To determine whether spoliation occurred, the majority of courts use some variation of a three-part test: '(1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed with a 'culpable state of mind;' and (3) that the evidence was 'relevant' to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense.'" *Ghorbanian v. Guardian Life Ins. Co. of Am.*, No. C14-1396-RSM, 2017 WL

1   1543140, at *2 (W.D. Wash. Apr. 28, 2017) (quoting *Apple Inc. v. Samsung Elecs.*

2   *Co.*, 888 F. Supp. 2d 976, 989 (N.D. Cal. 2012) (citing cases)).

3       If spoliation is found, courts have discretion to impose sanctions. *Ryan v.*

4   *Editions Ltd. W., Inc.*, 786 F.3d 754, 766 (9th Cir. 2015). "[C]ourts generally

5   consider three factors to determine whether and what type of sanctions to issue: '(1)

6   the degree of fault of the party who altered or destroyed the evidence; (2) the degree

7   of prejudice suffered by the opposing party; and (3) whether there is a lesser

8   sanction that will avoid substantial unfairness to the opposing party.'" *Ghorbanian*,

9   2017 WL 1543140, at *2 (quoting *Apple Inc.*, 888 F. Supp. 2d at 992).

10  **3.2     The Court finds that Encompass committed spoliation.**

11      Norcold argues that Encompass committed spoliation because Encompass

12  was under a duty to preserve the fire scene, destroyed relevant evidence on the

13  scene, and was subjectively culpable. Dkt. No. 55 at 9-13; *see Ghorbanian*, 2017 WL

14  1543140, at *2 (three-part test for spoliation). On all three fronts, the Court agrees.

15      "A party's duty to preserve evidence is triggered when a party knows or

16  reasonably should know that the evidence may be relevant to pending or future

17  litigation." *Knickerbocker v. Corinthian Colleges*, 298 F.R.D. 670, 677 (W.D. Wash.

18  2014) (internal quotation marks omitted); *see also Leon v. IDX Sys. Corp.*, No. C03-

19  1158 P, 2004 WL 5571412, at *3 (W.D. Wash. Sept. 30, 2004), *aff'd*, 464 F.3d 951

20  (9th Cir. 2006). "That duty arises as soon as a potential claim is identified." *Baliotis*

21  *v. McNeil*, 870 F. Supp. 1285, 1290 (M.D. Pa. 1994). "[T]he knowledge of a *potential*

22  subrogation claim is deemed sufficient to impose a duty to preserve evidence." *Id.*

23

1    (emphasis in original) (finding spoliation where subrogation-plaintiff destroyed fire

2    scene before product-manufacturer defendant could inspect).

3         Here, Encompass knew of its potential subrogation claim against Norcold

4    before authorizing demolition of the garage and RV in March 2021. After their

5    January and February 2021 inspections of the scene, both Encompass's experts and

6    the Snohomish County Fire Marshal identified the Norcold refrigerator as a

7    possible ignition factor. Encompass, in turn, had the good sense to preserve the

8    refrigerator, along with the heater and the dehumidifier, for forensic examination.

9    Thus, Encompass was clearly under a duty at the time of the demolition to preserve

10   evidence relevant to future litigation against Norcold.

11        Encompass counters that it had to balance this duty against a countervailing

12   duty to mitigate damages. Dkt. No. 57 at 10-11. Encompass contends that it struck

13   this balance by documenting the scene and preserving evidence for litigation while

14   allowing the insureds to demolish the garage and get on with their repair. *Id.* at 1-2.

15        The Court, however, does not accept that Encompass's mitigation efforts were

16   in fact in tension with its discovery duties. Encompass's experts cite *National Fire*

17   *Protection Association (NFPA) 921 – Guide for Fire and Explosion Investigations* as

18   the basis for their investigative method. Dkt. No. 58-2 at 30. Section 12.3.5 of NFPA

19   921, entitled "Spoliation of Evidence," provides best practices to prevent "the

20   movement, change, or destruction of evidence, or the alteration of the scene [in such

21   a way that] significantly impairs the opportunity of other interested parties to

22   obtain the same evidentiary value from the evidence." Dkt. No. 55-5 at 5. Subsection

23   12.3.4.2 of NFPA 921, entitled "Notification to Interested Parties," instructs that

ORDER - 6

"[c]laims of spoliation of evidence can be minimized when notice is given to all known interested parties that an investigation at the site of the incident is going to occur so as to allow all known interested parties the opportunity to retain experts and attend the investigation." *Id.* Encompass provides no reason why—before the March-April demolition—it did not notify Norcold of its potential claim and allow Norcold to attend one of the scene inspections. Such notice need not have delayed or hindered Encompass's mitigation efforts. Indeed, a short letter to Norcold would have sufficed under these circumstances. Thus, the Court finds that Encompass was under a duty to preserve evidence, unaltered by its duty to mitigate.

As for relevance, Encompass disputes the materiality of the destroyed evidence on two grounds. First, Encompass asserts that it preserved all *relevant* evidence—the dehumidifier, the heater, the refrigerator—and destroyed only *irrelevant* evidence. Dkt. No. 57 at 7. On the one hand, this position is bolstered by the fact that the Fire Marshal, like Encompass's experts, concluded from his scene inspection that the heater, dehumidifier, and refrigerator were the likely ignition factors. But on the other, who is Encompass to unilaterally decide relevance and why should Norcold have to defer to the Fire Marshal's conclusion? In fact, Norcold disagrees with Encompass's and the Fire Marshall's take, citing its expert's contrasting opinion that "Encompass and its experts failed to preserve critical electrical artifacts from the electrical systems of the [RV,] including but not limited to electrical wiring for both the 120-volt AC and the 12-volt DC electrical systems, the 120-volt AC circuit breaker panel and circuit breakers, the 12-volt DC fuse panel and fuses, the duplex outlet receptacles (including the outlets in which the

electric dehumidifier and the electric radiant heater were plugged in at the time of the fire), the RV shore power cord, and the shore power outlet into which the shore power cord was plugged at the time of the fire." Dkt. No. 55-5 at 7. And Norcold's expert states that he "cannot exclude or rule out any involvement of the electrical systems of the RV as part of the ignition sequence of the fire." *Id.* The Court is in no position to disagree.

Second, Encompass attacks the relevance of the destroyed evidence on the alternative theory that Norcold does not bear the burden of proof about the cause of the fire and was thus not prejudiced by the destruction of other possible ignition sources. Dkt. No. 57 at 7 ("Defendant does not need to prove what else might have caused the fire[.]"). This line of argument fails. If Norcold had been able to inspect the fire scene and thereby identify evidence that, say, the RV's electrical system caused the fire, then such evidence would surely be relevant to a defense to liability. By Encompass's line of reasoning, it is unclear whether the party bearing the burden of proof could *ever* commit spoliation.

The Court now turns to the "state of mind" factor. As Norcold points out, "[i]n the Ninth Circuit, a finding of 'bad faith' is not necessary to establish a culpable state of mind; rather, all the Court must find is that Plaintiff acted with a 'conscious disregard' of its obligations." Dkt. No. 55 at 12 (citing *Apple Inc. v. Samsung Elecs. Co.*, 881 F. Supp. 2d 1132, 1147 (N.D. Cal. 2012)). Encompass testified in its 30(b)(6) deposition that it knew of its obligation to allow "fire investigators to be able to go into a fire scene and inspect the loss area in its immediate post-loss condition[.]" Dkt. No. 55-1 at 6. As such, Encompass had the good foresight to preserve the

ORDER - 8

heater, dehumidifier, and refrigerator. Yet it failed to timely notify Norcold of its possible subrogation claim before demolition of the fire scene. The Court finds that this failure amounted to a conscious disregard of its discovery obligations.

The Court thus concludes that all three factors for spoliation—duty to preserve, relevance, and culpable state of mind—are satisfied. The duty to preserve fire scenes for inspection by the opposing party is well-established. S*ee Baliotis*, 870 F. Supp. 1285 (finding spoliation where plaintiff allowed fire scene to be demolished before microwave-oven-manufacturer defendant could inspect, even though plaintiff preserved microwave); *Ass'n Underwriters of Am., Inc. v. Rhodes Dev. Grp., Inc.*, No. 1:09-CV-0257, 2013 WL 818596 (M.D. Pa. Mar. 5, 2013) (finding spoliation for destruction of fire scene); *Howell v. Maytag*, 168 F.R.D. 502 (M.D. Pa. 1996) (same); *Dyvex Indus., Inc. v. Agilex Flavors & Fragrances, Inc.*, No. 12-CV-0979, 2018 WL 1070803 (M.D. Pa. Feb. 27, 2018) (same); *Henkel Corp. v. Polyglass USA, Inc.*, 194 F.R.D. 454 (E.D.N.Y. 2000) (same); *Nautilus Ins. Co. v. Appalachian Power Co.*, No. 7:19-CV-00380, 2021 WL 1321319 (W.D. Va. Apr. 8, 2021) (same); *Allstate Ins. Co. v. Sunbeam Corp.*, 53 F.3d 804 (7th Cir. 1995) (same). Encompass knew, or should have known, better than to demolish the RV and garage without allowing Norcold to inspect the scene. Accordingly, the Court finds that spoliation occurred and turns now to the question of sanctions.

ORDER - 9

1

2

### 3.3    The Court finds that an adverse-inference jury instruction is the appropriate sanction.

Norcold argues for three forms of sanctions: outright dismissal, exclusion of

evidence unfavorable to Norcold from Encompass's inspection of the fire scene, and

an adverse-inference jury instruction. The Court considers each in turn.

"Dismissal is an available sanction when 'a party has engaged deliberately in

deceptive practices that undermine the integrity of judicial proceedings' because

'courts have inherent power to dismiss an action when a party has willfully deceived

the court and engaged in conduct utterly inconsistent with the orderly

administration of justice.'" *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 958 (9th Cir. 2006)

(quoting *Anheuser-Busch, Inc. v. Nat. Beverage Distributors*, 69 F.3d 337, 348 (9th

Cir. 1995)). "Before imposing the 'harsh sanction' of dismissal, however, the district

court should consider the following factors: '(1) the public's interest in expeditious

resolution of litigation; (2) the court's need to manage its dockets; (3) the risk of

prejudice to the party seeking sanctions; (4) the public policy favoring disposition of

cases on their merits; and (5) the availability of less drastic sanctions.'" *Id.* (quoting

*Anheuser-Busch, Inc.*, 69 F.3d at 348). "While the district court need not make

explicit findings regarding each of these factors, a finding of willfulness, fault, or

bad faith is required for dismissal to be proper." *Id.* (quotation marks and citation

omitted). "Additionally, the district court must consider less severe alternatives

than outright dismissal." *Id.* (quotation marks and citation omitted).

While dismissal would surely advance the public interest in resolving

litigation quickly and ease the Court's docket management, the Court finds—

ORDER - 10

especially given the public policy favoring disposition of cases on their merits—that dismissal is too harsh a penalty for Encompass's spoliation. Encompass's degree of fault—as well as the degree of prejudice to Norcold—are only moderate. From the time of the fire to the time of demolition was a matter of weeks. During that period, Encompass extensively photographed the fire scene and preserved the refrigerator, dehumidifier, and heater. Norcold has been able to inspect this photographic and physical evidence on multiple occasions. This case is thus distinguishable from cases in which the plaintiff took no action whatsoever to preserve evidence for examination by the opposing side. *See, e.g., Nautilus Ins. Co. v. Appalachian Power Co.*, No. 7:19-CV-00380, 2021 WL 1321319 (W.D. Va. Apr. 8, 2021) (ordering dismissal as sanction for spoliation where plaintiff demolished burnt-out building without preserving any evidence therein); *State Farm Fire & Cas. Co. v. Gen. Motors, LLC*, 542 F. Supp. 3d 1124 (D. Idaho 2021) (ordering dismissal as sanction for spoliation where plaintiff, alleging automobile manufactured by defendant caused fire, sold automobile in salvage auction); *cf. Hickerson v. Pride Mobility Prods. Corp.*, 243 F.R.D. 357, 359 (W.D. Mo. 2007) (rejecting defendant's position "that plaintiff's willful destruction and discarding of the house and all of its contents (other than the remains of the [alleged ignition factor, which were preserved]) constitute intentional spoliation which justifies the harshest remedy—the entry of summary judgment in favor of the defendants"). The Court does not find that Encompass "deliberately… undermine[d] the integrity of… proceedings" or "engaged in conduct utterly inconsistent with the orderly administration of justice." *See Leon*, 464 F.3d at 958. As such, dismissal is inappropriate.

For similar reasons, the Court finds that excluding all "evidence from [Encompass's] inspections of the Fire Scene that is unfavorable to Norcold" would unduly hinder resolution of this case on the merits. *See* Dkt. No. 15 at 8. Norcold has been able to inspect extensive photographic evidence of the fire scene, as well as the heater, dehumidifier, and refrigerator that Encompass collected and preserved for forensic review. To disallow evidence from Encompass's inspection of the fire scene would likely hinder Encompass from fully articulating its theory about the source of the fire. Given that Encompass took affirmative measures to preserve evidence from the scene, and thus only moderately prejudiced Norcold, such exclusion is unwarranted.

By contrast, the Court finds that an adverse-inference jury instruction strikes the correct balance between allowing this case to proceed on the merits while, at the same time, prohibiting Encompass from benefiting from spoliation of evidence. "In the Ninth Circuit, spoliation of evidence raises a presumption that the destroyed evidence goes to the merits of the case, and further, that such evidence was adverse to the party that destroyed it." *Knickerbocker v. Corinthian Colleges*, 298 F.R.D. 670, 678 (W.D. Wash. 2014) (citation omitted). And on review of similar cases nationwide—that is, fire-loss cases in which defendants move for sanctions for spoliation stemming from the demolition of the fire scene—the Court finds that its sister courts have largely settled on adverse-inference jury instructions as the appropriate sanction for this type of discovery violation. *See, e.g.*, *Baliotis*, 870 F. Supp. At 1286 ("[T]he appropriate sanction for the spoliation of evidence that occurred here is an adverse inference instruction to the effect that physical evidence

lost as a result of the destruction of the fire scene would have been unfavorable to the position asserted on behalf of the property owners."); *Ass'n Underwriters of Am., Inc.*, 2013 WL 818596, at *12 ("The court will… permit a jury instruction at trial as to the spoliation inference in light of Plaintiff's low degree of fault in contaminating the fire scene and the low degree of prejudice suffered by Defendants as a result."); *Howell*, 168 F.R.D. at 506 ("[W]hile a jury instruction on the spoliation inference is appropriate here, more severe sanctions are unnecessary."); *Dyvex Indus., Inc.*, 2018 WL 1070803, at *13 ("An instruction will be given to the jury that he/she may infer, should he/she choose, that if Agilex defendants were allowed to inspect the fire scene completely unaltered, including the location of Agilex's three drums of PPG as well as the systems and components parts of the kneader machine intact, this additional evidence from the unaltered scene would have been unfavorable to Dyvex."); *Henkel*, 194 F.R.D. at 457 ("The more appropriate remedy is an adverse inference charge instructing the jury that it may infer from plaintiff's removal of the fire debris that the evidence from the fire scene would have been unfavorable to the plaintiff… Plaintiff will remain free at trial to proffer an explanation for why it removed the fire debris and why it failed to notify defendant of the removal.") (internal quotation marks omitted); *Vigilant Ins. v. Sunbeam Corp.*, 231 F.R.D. 582, 590 (D. Ariz. 2005) (on renewed motion for judgment as a matter of law, rejecting defendant's argument that "the adverse inference instruction was an insufficient sanction").

As such, the Court will instruct the jury that (1) Encompass failed to preserve the fire scene, including the RV, and instead cleared all evidence from the scene

ORDER - 13

despite knowing it had a duty to preserve the evidence; (2) Encompass failed to give Norcold notice of any fire scene inspections prior to demolition, and (3) had Norcold been able to inspect the scene, the resulting evidence would have been favorable to Norcold and unfavorable to Encompass. Encompass, however, will remain free at trial to explain why it failed to provide Norcold an opportunity to inspect the scene prior to demolition.

### 3.4    The Court denies Norcold's motion to strike.

On reply, Norcold moves to strike certain statements contained in the declaration of Encompass's counsel George Shumsky (Dkt. No. 59). Dkt. No. 65 at 7. In his declaration, Shumsky recounts out-of-court statements made to him by Encompass's fire investigation expert. *See* Dkt. No. 59 ¶¶ 6-8. Norcold characterizes these statements as inadmissible hearsay. But the Court need not, and does not, rely on the Shumsky Declaration to resolve the instant motion for sanctions. Therefore, the Court denies Norcold's motion to strike. This decision does not bear on the admissibility of such evidence at trial.

## 4.   CONCLUSION

In sum, the Court FINDS that Encompass committed spoliation of evidence when it allowed the insureds' garage and RV to be demolished without providing Norcold notice and an opportunity to inspect the fire scene. The Court DENIES Norcold's request to dismiss Encompass's claims on this ground. Likewise, the Court DENIES Norcold's request to exclude evidence from Encompass's inspection of the fire scene. The Court GRANTS Norcold's request for an adverse jury

ORDER - 14

1    instruction and DIRECTS the parties to submit proposed language for this

2    instruction when they submit their proposed jury instructions, which are due by

3    February 10, 2025. *See* Dkt. No. 54. The Court DENIES Norcold's motion to strike

4    portions of the Shumsky Declaration. Dkt. No. 59.

5         It is so ORDERED.

6         Dated this 17th day of January, 2025.

7

8                                    Jamal N. Whitehead
                                     United States District Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

ORDER - 15